### THOMAS HOOPER'S LESSEE v. ELIZABETH, WHITTINGTON, LEVIN, and BENJAMIN WILLIAMS.

Court of Common Pleas. Sussex. November, 1796.

*Rodney's Notes.**

---

* This case is also reported in *Bayard's Notebook, 165; Wilson's Red Book,* 140.

*Bayard, Peery, Miller, White* [for plaintiff]. *Ridgely, Wilson, Fisher* [for defendants].

*White* for plaintiff. Declaration read. Patent dated June 24, 1673, from the Proprietary to Jeremiah Jadwin for 1750 acres called Martin's Hundred. Came into the possession of Henry Hooper, who by his will dated March 27, 1720, devised to John Hooper and Thomas Hooper, the said tract to be divided between them by Henry Hooper and Matthew Traverse. Will dated March 27, 1720; August 30, 1720 proved. Hooper and Travers begin the division 132 perches from the second boundary. Certificate of division dated November 26, 1726. Thomas Hooper died, and Henry, his son, inherited the land as tenant in tail. August 9, 1781, deed from Henry Hooper, son of Thomas, to John, tenant. July 25, 1789, will of Henry Hooper by which he devised to John Hooper ⅓ part of his dividend of Martin's Hundred, ⅓ to Henry, and ⅓ to Thomas. Deed from John Hooper to William Elligood for two tracts of land part of Martin's Hundred laid off to John Hooper, part of John Hooper's dividend conveyed to William Elligood, and the counsel state a part in the west part of said tract passed to William Juett, who died intestate, and the said lands were (except the widow's third) allotted to Robert Juett April 7, 1784. March 16, 1790, deed from R. Juett, Jesse Griffith and Mary, his wife, to John Hooper. Consideration, £163. October 26, 1790, division of Henry Hooper's dividend between John, Henry, and Thomas Hooper. The lands marked C and D claimed by plaintiff. House not claimed.

William Stayton, surveyor. [I] began at the white oak shown to [me] near twenty years ago by Hooper, Bailey etc., [and] ran up the river to a pine stump shown me as a second boundary by Rhea, the plaintiff, in a former cause. No objection was made at that time by Adams. Williams was not at home. I allowed more than 6° five or six years ago between first and second boundary. The land between Martin's hundred and the creek were held under Hoopers Chance, [which] begins at a locust post within five feet of B [and] runs up the creek. First and second line leaves the creek, third line crosses. The letter B is twenty-four perches from the line. The second line I ran allowing 3° 45′ variation, 132 perches, to A. My reason for allowing

this variation was I had run it before and found it would hit the corner white oak. The land marked C–D and the space between is in possession of the defendants. The lines of the tract conveyed by Juett to Thomas Hooper included D, and Henry Hooper was said to be the eldest son of old Thomas, the devisee, and father of John Henry and Thomas. William Juett has been in possession since 1774. I have understood William Elligood was in possession before. The marked trees on the division line do not appear so old as those on the second and third line. I blocked some on B–G, [which] appeared to be blocked forty-eight years. I have seen some small and some large on B–G; about twenty years ago some were marked. The white oak at B appears to be marked for a line. Plaintiff offered to prove by Mr. Stayton that Nathan Adams admitted the place marked A as the beginning of the division line when he was laying down the pretensions in the ejectment Rhea [brought] against him.

Defendants objected, and the Court were divided. JOHNS, C. J., for admitting the evidence; RODNEY, J., *contra.*

Adams was in Kentucky.

Question, whether the question shall be answered by the witness. 3 Morg.Ess. 179, on motion for new trial court were divided, no judgment could be given. 6 Vin.Abr. 501, no judgment could be entered when the court are divided.

Court were of opinion the examination should go on.

William Stayton (continuing). Adams claimed all the land to the southwest of Herring Run and showed A and B. He claimed from A. to B. He always claimed to the marked line as well as to the Run. Nineteen or twenty-one years ago Henry Hooper and the Williamses took me to B to run the Grand Division, no other was mentioned. I run the tract round, without variation. The line of marked trees is N. 24 W. Where patents call for the water course, I measure the said courses. I have thought that if 132 perches were laid down on the course of the river it would not extend farther than B. If I allowed no variation, it would carry me to B. I never heard of a boundary at A.

Thomas Hooper. I gave Elizabeth Williams notice of the depositions of survey. Witnesses to be taken in five days. She and her sons attended.

Deposition of Roger Hooper.

*Fisher* for defendants. Deed from John Hooper to William Elligood dated May 16, 1744. Consideration £255 sterling for 875 acres. October 13, 1750, deed from William Elligood to Thomas Williams. April 2, 1751, deed from Thomas Williams to Isaac Williams. May 18, 1762, will of Isaac Williams proved August,

1765. Bond between Joshua and Spencer Williams, August 25, 1777, for the conveyance of a tract on Herring Run containing thirty acres. August 29, 1787, proved 1794, will of Spencer Williams devising sixty acres, part of Martin's Hundred, to the three defendants. November 10, 1749, deed from William Elligood to William Juett for four hundred acres land in Martin's Hundred. October 15, 1729, [——].[1]

Julius A. Jackson. I have known the boundary at B thirty-five or forty years. I have seen the line run once or twice, never heard any objection to the boundary. Fifteen years ago was the first running I saw. I heard John Cannon say twenty years ago that was the division between Hooper and Williams. At the second running O. Smith attempted to prove a boundary about one hundred yards further but could show none. There is a locust post by B. Smith said it was a white oak fifty yards from the creek. I was told by old John Cannon, seventy years old then, forty years ago, that the pine tree in the gulley was the second boundary of Martin's Hundred.

Elijah Tull. About fifteen years ago, Henry Hooper told [me] that [the] white oak near the creek, fifteen yards from it, was the boundary of the division line, and he showed me several marked trees fifteen years ago and told me not to cut over it. The line comes down to B. I got house logs over the line. Henry Hooper sent his people and fell them; I hewed them. It was nearby, opposite the house. Twelve years ago Hooper's people cut a tree over the line, and he promised Williams another. A little before the old man's death there was some small dispute about the variation. He took some timber off for this house in 1784 or 1785.

Joshua Obur. About twenty-one or twenty-two years ago Mr. Rhea got Mr. Stayton to board at our house to try the lines of Martin's Hundred. We three went to the first boundary, run to the Inner Landing or Hooper's house. Rhea went for Hooper. He came with us to the scrub white oak at B and said it was the beginning of the division between Thomas, his father, and his uncle John, and he said he abided by that, and the locust post close by was the beginning of Hooper's Chance, and showed me some marked trees up the line. The ground near where the road crosses the run appears to have been cleared thirty years. I understood Stayton and Rhea wanted to find B when they began to run.

Thomas Laws. Henry Hooper once directed my brother and me not to cut over where a stooping tree was in or near the marked line, thirteen or fourteen years ago. I think Samuel

---

[1] Blank in manuscript.

Williams was in possession. Mr. Hooper asked Spencer Williams if he would give up the [trees]. Williams said he would hold them as long as he could. Hooper offered to leave their dispute to men.

Defendants offered depositions taken under a commission issued out of the Court of Chancery to perpetuate boundaries. Plaintiffs objected on the ground that it did not appear from the indorsement on the commission that but two of the commissioners signed or that notice agreeably to the Act was given.

The Court were of opinion that the depositions, being recorded in the Chancery docket, and it appearing the witnesses were dead, should be read in evidence.

John Hinds' deposition read.

Michael Colbour's deposition read.

Abadiah Smith's deposition read.

Robert Cannon, surveyor.

*Major Peery* for plaintiffs. If the marked line should be established, you will find C to belong to the defendants.

*Fisher* for defendants.

*Wilson.* The variation should have been 1° for nineteen years —would now be 6½°. If you begin at the first boundary and run the two first lines with the creek or near it and from thence with the same variation, you would strike the boundary in Hughes' plantation. It is incumbent on plaintiffs to prove a boundary somewhere; they have not proved any.

*Bayard* for plaintiff. 2 Bl.Comm. 323. An exchange will pass lands, but the word exchange must be used and must describe the land. 2 Esp.N.P. 155.

*Ridgely* for defendant. In ejectment a man must show a title, and they must if they have title, also show or prove possession or they cannot recover in this action.

*Miller* for plaintiff. As to possession, if we were in possession of the lands to the west of the division, it is sufficient for us to recover. William Juett was in possession in 1774, before that *it was* in Elligood. That is enough.

*Bayard* for plaintiffs. Thomas Hooper devised this land to be divided equally. It appears John had more by 265 acres than Thomas.